**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHELE MOORE,<br><br>Plaintiff,<br><br>v.<br><br>HUDSON COUNTY CORRECTIONAL FACILITY, DEPARTMENT OF CORRECTIONS, and in both their official and individual capacities; ABRAMS AUTUN, Administrative Director, DAVID DRUMLER, Personnel Director, HOWARD MOORE, Assistance Personnel Director, LAWRENCE HENDERSON (Former) Director of Personnel, ANTHONY STALTARI, Management Specialist, RALPH GREEN (Former) Correctional Director, CAPTAIN STEVETTE SCOTT, CAPTAIN JOE MONTANEZ and JANE and JOHN DOES (1 thru 10),<br><br>Defendants. | Civil Action No. 05-1230 (JAG)<br><br>**OPINION** |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the Motion To Dismiss For Failure To State A Claim And/Or Summary Judgment by Defendants Hudson County Correctional Facility ("HCCF"), Department of Corrections, Abrams Autun ("Autun"), David Drumeler ("Drumeler"), Howard Moore ("Moore"), Lawrence Henderson ("Henderson"), Anthony Staltari ("Staltari"), Ralph Green ("Green"), Oscar Aviles ("Aviles"), Captain Stevette Scott ("Captain Scott"), and

Captain Joe Montanez ("Captain Montanez").[1] For the reasons set forth below, the motion to dismiss shall be granted, in part, and denied, in part.

## I. BACKGROUND

Pro se Plaintiff Michele Moore ("Plaintiff") was hired in November of 1987 to work as a provisional corrections officer at the Hudson County Correctional Center. (Statement of Material Facts ("SMF"), included in Def. Br., at ¶ 2.) The Complaint and the Amended Complaint center on a number of instances in which Plaintiff allegedly endured improper and discriminatory treatment in the workplace by Defendants. In addition to noting several instances in which Plaintiff allegedly was yelled at by supervisors or co-workers[2] (Am. Compl. ¶¶ 36, 47, 73, 80), the pleadings focus on five instances in which Plaintiff incurred disciplinary infractions.

### A. The May 2001 Incident

The Amended Complaint states that, in or about May of 2001, a seminar instructor filed an incident report against Helen Ford ("Ford"), one of Plaintiff's co-workers, which accused

---

[1] The Notice of Motion lists the aforementioned individuals and entities as the "moving parties," but later states that the motion seeks dismissal of the complaint and/or summary judgment "on behalf of the [sic] all Defendants," which presumably also includes Captain Robert Day ("Captain Day"), Kirk Eady ("Eady"), Hudson County Correctional Center ("HCCC"), and the County of Hudson ("Hudson County," and, collectively with HCCF, Department of Corrections, Autun, Drumeler, Moore, Henderson, Staltari, Green, Aviles, Captain Scott, Captain Montanez, Captain Day, Eady, and HCCC, the "Defendants"). (Notice of Motion 2.) Although Captain Day, Eady, HCCC, and the County of Hudson are not listed in the Notice of Motion, further evidence of the intent to move on behalf of all Defendants is the fact that Michael L. Dermody, First Assistant, County Counsel, Hudson County, represents all of the Defendants in this action. This Court shall treat this motion as filed on behalf of all Defendants.

[2] In particular, Plaintiff experienced three incidents in which Plaintiff reported Captain Scott to her commanding officer for pulling Plaintiff from her assignment to cover other areas of the HCCC. (SMF ¶ 7.) Plaintiff complained that she had seniority, and should not be the one asked to cover every time. (Id.) Captain Scott yelled at Plaintiff when questioned about her decision to reassign Plaintiff. (Id. ¶ 8.)

Ford of engaging in harassing behavior (the "May 2001 complaint"). (Id. ¶ 19.) Plaintiff alleges that she, together with Moore, Staltari, and another co-worker, assisted the instructor in drafting the incident report. (Id.) On August 30, 2001, Plaintiff received a mailing that disclosed the resolution of the investigation, and discovered that her name, and not Ford's, was listed as the alleged offender. (Id. ¶¶ 20-21.)

Plaintiff contacted Henderson, Staltari, Green, and Autun to inform them of the error, and to request assistance in rectifying the situation. (Id. ¶¶ 22-23, 26.) Plaintiff also informed Staltari that she was never notified of an incident report filed against her, and that she was never given her right to "due process." (Id.) On October 9, 2001, Henderson drafted a memo directing Staltari to discuss the incident report with Plaintiff "and to take appropriate action regarding the error's [sic] made." (Id. ¶ 27.) Ultimately, Plaintiff contends, "[t]he error's [sic] were not corrected." (Id. ¶ 25.) Plaintiff asserts that "[t]he Hudson County Correctional Center, under the direction of Henderson, Staltari, Green, Autun, and Moore, failed to conduct a proper, impartial investigation and otherwise failed to take appropriate action." (Id. ¶ 31.)

**B. The September 7, 2003 Incident**

On September 7, 2003, Montanez observed an officer sleeping, presumably while on duty. (Id. ¶ 40.) Montanez asked Plaintiff to come outside and observe the officer, but Plaintiff sent the "Assign Sargent [sic]" in her place. (Id.) Montanez yelled at Plaintiff, in the presence of another officer, for failing to report outside. (Id. ¶ 42.) Montanez also "wrote [her] up on five (5) charges requesting suspension, termination and resignation." (Id. ¶ 41.) Plaintiff contends that Montanez "intentionally and maliciously made, and continues to make, defamatory statements of fact concerning Plaintiff in the form of written reports falsely accusing Plaintiff of unlawful

acts." (Id. ¶ 44.)

Plaintiff states that, on February 27, 2004, a disciplinary hearing was held to resolve the five charges filed against Plaintiff in connection with the September 7, 2003 incident: (1) conduct unbecoming a public employee; (2) insubordination; (3) neglect of duty; (4) incompetency, inefficiency, or failure to perform duties; and (5) other sufficient cause. (Id. ¶ 55; Preliminary Notice of Disciplinary Action, attached as Ex. H to Am. Compl.) "On March 29, 2004, all charges with respect to the incident of September 7, 2003 . . . were dismissed except one charge which was sustained[,] 'Inability to Perform Duties' . . . ." (Am. Compl. ¶ 56; Final Notice of Disciplinary Action, attached as Ex. I to Am. Compl.; Letter from Howard Moore dated March 16, 2006 re: Correction Sergeant Michelle [sic] Moore Disciplinary Hearing, attached as Ex. J to Am. Compl.) However, Plaintiff contends that she was never originally charged with "Inability to Perform Duties." (Am. Compl. ¶ 56.) Plaintiff asked Moore for clarification regarding this charge, but never received a response. (Id. ¶ 57.)

On August 2, 2004, Plaintiff received new charges pertaining to the September 7, 2003 incident and the February 27, 2004 disciplinary hearing. (Id. ¶ 59.) The charges stated that, at the disciplinary hearing, Plaintiff entered into evidence a falsified memorandum. (Id. ¶ 61; SMF ¶ 12.) Plaintiff contends that the memorandum was not forged, and that Defendants were unable to prove that the document was phony. (Am. Compl. ¶¶ 62-63.) Neither the Complaint nor the Amended Complaint comment on whether and how these new charges were resolved.

### C. The July 2005 Incident

On July 15, 2005, Lieutenant Tazetto requested that a corrections officer contact Plaintiff to ask her to serve disciplinary charges on an inmate. (Id. ¶ 85; SMF ¶ 13.) Plaintiff responded

to the corrections officer by informing him that she was handling other issues, and could not offer any assistance. (Am. Compl. ¶ 86.) After receiving word of Plaintiff's response to his request, Lieutenant Tazetto asked Captain Campbell to page Plaintiff to come to the front area. (Id. ¶ 87.) Plaintiff reported to the front area, and explained to Captain Campbell that she was asked, and not ordered, to serve the disciplinary charge. (Id. ¶¶ 88-89.) Ultimately, Deputy Director Roberts learned of the situation, and informed Lieutenant Tazetto that he was responsible for serving the disciplinary charge on the inmate. (Id. ¶ 90; SMF ¶ 13.) Plaintiff submits that this incident "aggravated me and was so stressful that it caused me to have an anxiety attack and severe chest pains." (Am. Compl. ¶ 91.) Plaintiff wrote a report about this incident and submitted it to Day and Captain Campbell. (Id. ¶ 95.)

"As a result of this incident, [P]laintiff visited her doctor[,] who had her take a stress test." (SMF ¶ 13.) On July 27, 2005, Eady and Day told Plaintiff that she must attend an "Unfit for Duty Evaluation." (Am. Compl. ¶¶ 96-97.) The following day, "Dr. Molnair, the County of Hudson's doctor," examined Plaintiff, found that Plaintiff failed the fitness for duty examination, and advised her to leave work and see a psychiatrist. (Id. ¶¶ 98-100; SMF ¶ 13.) Plaintiff was not able to get an appointment for a psychiatric examination until six days later, causing her to miss six days of work. (Am. Compl. ¶ 101.) Plaintiff admits that, "[d]uring the period where plaintiff was unfit for duty, she received her pay." (SMF ¶ 13.)

Plaintiff wrote a report "about the incident that occurred with [Lieutenant] Tazetto and about Defendants Day and Eady putting me out from work for being 'Unfit for Duty,'" and submitted this report to Aviles, the Director of the Correctional Center. (Id. ¶ 102.) Eady responded to the report, despite what Plaintiff labels in the Amended Complaint as a "conflict of

interest." (Id. ¶ 103.) "Eady had responded to [P]laintiff's grievance by stating that 'it appears that this is more of a complaint, rather than a grievance, and should be filed with Anthony Staltari, personnel officer.'" (SMF ¶ 14.) Neither the Complaint nor the Amended Complaint discuss the outcome of Plaintiff's report.

**D. The March 2006 Incident**

On February 13, 2006, Plaintiff requested to attend certain topical training classes. (Am. Compl. ¶¶ 122-23.) Plaintiff had to reschedule some of these classes because of shift changes. (Id. ¶ 125.) On March 10, 2006, Plaintiff received a Probationary Progress Report, in which she received unsatisfactory reviews for missing three training classes. (Id. ¶ 127.) In response to the report, Plaintiff informed Montanez that she had submitted a document justifying her inability to attend these classes. (Id. ¶ 128.) Plaintiff also inquired as to why she was not given three weeks of training, like other lieutenants had received in the past. (Id. ¶ 130.)

On March 19, 2006, Montanez gave Plaintiff a "Notice of a Minor Disciplinary," which stated that Plaintiff was suspended for three days. (Id. ¶ 137.) Plaintiff also received "a Notice with respect to overtime slips." (Id. ¶ 138.) Plaintiff requested an appeal of the notice of suspension. (Id. ¶ 139.) Plaintiff also delivered to Pat Shiel, Director of Personnel, written complaints regarding other incidents she has had to endure in the workplace. (Id. ¶¶ 139, 145-46.) Shiel never responded to the complaints. (Id. ¶ 147.)

On April 19, 2006, Plaintiff requested a copy of the Payroll Deduction Form submitted in connection with her suspension. (Id. ¶ 161.) Upon receiving a copy of the form, Plaintiff noted that the payroll deduction was requested by Montanez. (Id. ¶ 165.) Plaintiff also asserts that the form did not identify any individual as approving of the payroll deduction. (Id.)

**E. The March 2006 Incident**

On March 25, 2006, Lieutenant Nalls asked Plaintiff to sign off on an inmate's discharge record. (Id. 149.) Due to Plaintiff's confusion as to whether she had the authority to sign the release, Plaintiff did not assist in the inmate's discharge. (Id. ¶ 152.) Montanez later gave Plaintiff an unsatisfactory review with respect to this incident. (Id. ¶ 155.)

**F. The Federal Complaints**

On March 1, 2005, Plaintiff filed a Complaint against HCCF, Department of Corrections, Autun, Drumeler, Moore, Henderson, Staltari, Green, Aviles, Captain Scott, and Captain Montanez (the "Complaint"), alleging discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964.[3] On June 27, 2006, Plaintiff amended the Complaint (the "Amended Complaint"), adding Day, Eady, HCCC, and Hudson County as additional party-defendants. The Amended Complaint raises Section 1983 claims based on alleged violations of, and a conspiracy to violate, Plaintiff's constitutional rights. The Amended Complaint also raises state and common law claims for negligent infliction of emotional distress, intentional infliction of emotional distress, negligent training and disciplinary practice and procedures, and defamation.[4]

---

[3] Although the Complaint does not expressly reference the New Jersey Law Against Discrimination (the "NJLAD"), Defendants argue in their motion brief that Plaintiff's NJLAD claim should be dismissed, without acknowledging Plaintiff's failure to name the statute in the Complaint and the Amended Complaint. (Def. Br. 30.) Due to Defendants' unqualified recognition of a NJLAD claim, as well as Plaintiff's unequivocal intent to assert discrimination and harassment claims against Defendants, this Court shall construe the Complaint as raising a claim under the NJLAD.

[4] The Amended Complaint does not include or incorporate Plaintiff's Title VII claim raised in the original Complaint. Although, out of an abundance of caution, this Court shall consider all allegations raised in the Complaint and the Amended Complaint when resolving this

On August 1, 2007, Defendants filed a motion to dismiss the Amended Complaint, or, alternatively, for summary judgment.[5]

## II. STANDARDS OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."

---

motion, see Rhett v. Disman, 228 F. App'x 225, 227 (3d. Cir. 2007), this Court declines to recognize a Title VII claim raised against Day, Eady, HCCC, and Hudson County, who were included in this action only after the Amended Complaint was filed, and who therefore have not received notice of a Title VII cause of action against them.

[5] In "Plaintiff, Michele Moore's Opposition To Defendants Motion To Dismiss Plaintiff's Complaint For Failure To State A Claim And/Or Summary Judgment" ("Plaintiff's Opposition Brief"), Plaintiff alleges facts relating to the termination of her employment, which were not included in the Complaint or the Amended Complaint. However, these additional facts shall not be taken into consideration by this Court in resolving this motion. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Commw. of Penn., ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 109 n.9 (3d Cir. 2002) (noting that "prisoner plaintiff (or any other plaintiff) should not be able to effectively amend a complaint through any document short of an amended pleading").

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted).) Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 Fed. App'x 174, 179 (3d Cir. 2006).

**B. Motion To Dismiss Standard**

A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his allegations that will entitle him to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

On a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). However, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "The pleader is required to 'set forth sufficient information to outline

the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1357 at 340) (2d ed. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 127 S. Ct. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965.

The court's review of the sufficiency of a pro se complaint, "however inartfully pleaded," is less stringent than its review of pleadings prepared by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). In addition, because Moore is a pro se plaintiff, this Court shall, out of an abundance of caution, consider all allegations in both the Complaint and the Amended Complaint when resolving this motion to dismiss and/or for summary judgment. See Rhett v. Disman, 228 Fed. App'x 225, 227 (3d Cir. 2007).

## III. ANALYSIS[6]

### A. Section 1983 Claims

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

---

[6] Defendants' motion papers do not discuss any grounds upon which Plaintiff's Title VII claim should be dismissed. Accordingly, this Court shall analyze the sufficiency of Defendants' arguments urging dismissal of the Section 1983 claim, the New Jersey Law Against Discrimination claim, and the state and common-law tort claims.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.1994).

The Amended Complaint repeatedly states that Hudson County "maintained an express or implied policy or otherwise permitted a widespread practice or custom of unconstitutional actions by members of the Hudson County Correctional Center . . . and otherwise facilitated conditions that allowed such emotion [sic] distress and unconstitutional conduct to occur." (Am. Compl. ¶¶ 43, 50, 65, 84, 106, 132.) This blanket assertion makes it difficult for this Court to discern the constitutional violations alleged by Plaintiff.

Notably, the Amended Complaint states that Defendants "each owed Plaintiff the right to 'due process' with respect to disciplinary actions and failed to use progressive disciplinary policy set forth by Defendants, County of Hudson and the Hudson County Correctional Center." (Id. ¶ 134.) The Amended Complaint also states that Hudson County, the Department of Corrections, and the HCCF "failed to properly supervise or effectively control subordinate correctional officers whom they knew or should have known engaged in unlawful and unconstitutional misconduct . . . ." (Id. 54.) Accordingly, this Court will construe the Amended Complaint as raising Section 1983 claims for (1) violation of the Fourteenth Amendment, and (2) failure to

train.

1. Fourteenth Amendment

The Fourteenth Amendment's Due Process Clause provides that a state may not "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. "[W]hen a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the . . . interest being deprived is 'fundamental' under the Constitution." Nicholas v. Penn. State Univ., 227 F.3d 133, 142 (3d Cir. 2000) (declining to recognize that tenured professor has property interest in his public employment).

Plaintiff has failed to articulate a fundamental right infringed upon by Defendants. Plaintiff's suspension and alleged pay decrease did not contravene any property rights guaranteed to her under the Constitution. See id.; McGovern v. City of Jersey City, No. 98-5186, 2006 WL 42236, at *13 (D.N.J. Jan. 6, 2006) ("Plaintiff is presumably arguing that the Hudson County Defendants' conduct resulted in loss of Plaintiff's property interest, which include wage parity, overtime, pension, promotion to staff Sheriff's Sergeant position, and denial of transfer requests. This Court cannot say that these claims fall within the scope of property or liberty interest[s] afforded due process protection.").

Plaintiff also has not shown that Defendants' conduct impinged on her liberty interests. The Supreme Court has held that an at-will public employee does not possess a liberty interest in his employment under the Fourteenth Amendment "when there is no public disclosure of the reason for the discharge." See Bishop v. Wood, 426 U.S. 341, 348 (1976). "An employment action implicates a [F]ourteenth [A]mendment liberty interest only if it (1) is based on a charge

against the individual that might seriously damage his standing and associations in the community, for example, that he had been guilty of dishonesty, or immorality[;] or (2) imposes on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities." Robb v. City of Phila., 733 F.2d 286, 294 (3d Cir. 1984).

The pleadings do not allege facts that satisfy either prong of the aforementioned test. Although Plaintiff states that she was reprimanded in front of other co-workers, she does not introduce any facts showing that her disciplinary citations were publicly disseminated in any way. Furthermore, while Plaintiff maintains that she suffered mental anguish and humiliation, "[s]tigma to reputation[,] alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the [F]ourteenth [A]mendment." Id.

"The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." Bishop v. Wood, 426 U.S. 341, 349 (1976) (holding that discharge of public employee did not deprive him of property interest protected under the Fourteenth Amendment). Absent a fundamental interest protected under the Fourteenth Amendment, Plaintiff cannot allege a violation of her substantive or procedural due process rights.

2. Failure To Train

Plaintiff likewise has not alleged a Section 1983 claim for failure to train. In order to prove that a public entity failed to train or supervise its employees, Plaintiff must show "that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." See Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). "[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must

be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. (citing Walker v. City of N.Y., 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiff has not alleged any facts describing a situation regularly mishandled by Hudson County employees that resulted in a deprivation of her constitutional rights. While the Amended Complaint illustrates several scenarios in which Plaintiff was reprimanded by her superiors, such actions do not threaten to create a deprivation of any constitutional right. Even if Plaintiff's suspension was unwarranted, "numerous individual mistakes are inevitable in the day-to-day administration of our affairs . . . [and] the United States Constitution cannot feasibly be construed to require federal judicial review for every such error." Bishop, 426 U.S. at 349. Plaintiff's inability to highlight facts elucidating a constitutional violation compels this Court to dismiss her Section 1983 claim for failure to train [7]

**B. Plaintiff's State Law Claims**

Defendants offer three arguments as to why Plaintiff's state law claims are unsustainable. First, Defendants state that they are public entities entitled to immunity under the New Jersey Tort Claims Act (the "NJTCA") against emotional distress claims.[8] Second, Defendants contend

---

[7] "A § 1983 conspiracy claim is not actionable without an actual violation of § 1983." McGovern, 2006 WL 42236, at *9. Plaintiff's failure to allege a violation of her constitutional rights impedes her ability to assert a Section 1983 conspiracy claim. Plaintiff's Section 1983 conspiracy claim, therefore, should also be dismissed.

[8] Defendants include the individual defendants when arguing for public entity immunity under the NJTCA. Of course, individuals are not recognized as public entities in the jurisprudence regarding the NJTCA. This assertion is bolstered by the existence of N.J. STAT. ANN. §§ 59:3-1 et seq., a separate statutory provision that governs a public employee's eligibility

that Plaintiff's failure to file a notice of claim, pursuant to the NJTCA, bars her ability to assert tort claims. Third, Defendants argue that Plaintiff's NJLAD claim must fail, as it violates the applicable two-year statute of limitations. This Court shall analyze each of these arguments seriatim.

1. New Jersey Tort Claims Act Immunity

Defendants posit that Plaintiff's claims for negligent and intentional infliction of emotional distress should be dismissed because Defendants are public entities entitled to immunity for such tort actions.[9]

The NJTCA states that, "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J. STAT. ANN. § 59:2-1. An exception is created for certain claims against public entities for pain and suffering resulting from an injury:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

---

for immunity under the NJTCA.

[9] The grant or denial of summary judgment, by operation of the Rule, does not address or require dismissal of the complaint. See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 121 n. 2 (3d Cir.1999). Accordingly, this Court shall analyze whether HCCF, HCCC, County of Hudson, and Department of Corrections are entitled to immunity under the NJTCA, to determine if entry of summary judgment in their favor is appropriate.

N.J. STAT. ANN. § 59:9-2(d). "Thus, [N.J. STAT. ANN. §] 59:9-2(d) contains a threshold expense qualification for the recovery of damages for pain and suffering against a public entity. In order to recover damages for pain and suffering, plaintiff must suffer a permanent injury *and* his medical expenses must exceed the monetary threshold of $3600." J.H. v. Mercer Cty. Youth Det. Ctr., 930 A.2d 1223, 1235 (N.J. Super. Ct. App. Div. 2007) (emphasis in original).

The New Jersey Supreme Court has described the legislative purpose of this subsection of the NJTCA as "an intent that N.J. STAT. ANN. § 59:9-2(d) should preclude recovery for pain and suffering based on subjective evidence or minor incidents." Collins v. Union Cty. Jail, 696 A.2d 625, 628 (N.J. 1997) (holding that, although plaintiffs typically cannot recover against public entities for psychological injuries, rape victim may recover from defendant based on post-traumatic stress disorder). Absent aggravating circumstances, such as a physical assault, psychological injuries do not constitute a permanent loss of bodily function. Rocco v. N.J. Transit Rail Operations, Inc., 749 A.2d 868, 874-75 (N.J. Super. Ct. App. Div. 2000) (discussing Ayers v. Twp. of Jackson, 525 A.2d 287 (N.J. 1987)).

The Amended Complaint alleges that Plaintiff experienced "mental anguish" and "extreme emotional distress" as a result of Defendants' conduct. (Am. Compl. ¶¶ 50, 65, 75, 84, 104.) However, Plaintiff has not set forth any facts showing that aggravating circumstances transformed Plaintiff's psychological injuries into a permanent loss of a bodily function, as required under N.J. STAT. ANN. § 59:9-2(d). Furthermore, Plaintiff has not presented evidence showing that she incurred medical expenses exceeding $3600. Without such evidence, Plaintiff cannot successfully articulate claims against HCCF, HCCC, County of Hudson, and Department of Corrections for negligent and intentional infliction of emotional distress.

2. The Notice Requirement Under the NJTCA

The NJTCA requires a plaintiff to file a notice of claim against a public entity within ninety days after the cause of action accrues. N.J. STAT. ANN. § 59:8-8; Epstein v. Smith, 709 A.2d 1353, 1355-56 (N.J. Super. Ct. App. Div. 1998) (dismissing defamation claim, among other state and common-law tort claims, because plaintiff failed to serve a notice of claim against the defendants). For purposes of the NJTCA, a cause of action accrues when the alleged injury occurs. Muhammad v. N.J. Dept. of Corr., No. 05-5001, 2007 WL 2318480, at *4 (D.N.J. Aug. 9, 2007).

The New Jersey Supreme Court held in Velez v. City of Jersey City that this notice requirement also applies to intentional tort claims. 850 A.2d 1238, 1244 (N.J. 2004). However, the New Jersey Supreme Court "noted that its holding applied prospectively to all similar causes of action accruing after the date of this opinion," which was issued on June 29, 2004. Garcia v. New Jersey, No. 06-435, 2006 WL 3490348, at *5 (D.N.J. Dec. 1, 2006) (citing Velez, 850 A.2d at 1246); Russo v. Atl. City Bd. of Educ., 2006 WL 686592, at *6 (N.J. Super. Ct. App. Div. Mar. 20, 2006) (holding that plaintiff was not required to satisfy the notice requirement under the NJTCA because his defamation claim accrued prior to the issuance of the Velez decision).

This Court observes that Plaintiff never denied Defendants' contention that she failed to file a notice of claim. As such, Plaintiff's negligent infliction of emotional distress claim warrants dismissal.

Because defamation and intentional infliction of emotional distress constitute intentional tort claims, however, this Court must determine whether these claims accrued before June 29, 2004, such that they are not subject to the notice requirement imposed by the NJTCA. To

support Plaintiff's defamation and intentional infliction of emotional distress claims, the Complaint and the Amended Complaint rely on a series of events occurring between May of 2001 and March of 2006. In light of the New Jersey Supreme Court's decision in Velez, Plaintiff's failure to comply with the strictures of the NJTCA precludes her from asserting a defamation claim or an intentional infliction of emotional distress claim against Defendants for any conduct occurring before June 29, 2004.

3. Statute of Limitations

Defendants contend that, to the extent Plaintiff attempts to raise a claim under the NJLAD, the applicable two-year statute of limitations necessitates dismissal of this claim. The NJLAD imposes a two-year limitation period within which a plaintiff must file a claim. Montells v. Haynes, 627 A.2d 654, 659 (N.J. 1993). The Complaint, filed on March 1, 2005, alleges discriminatory conduct by Defendants occurring within two years after Plaintiff filed the Complaint. As a result, the two-year statute of limitations does not bar Plaintiff's NJLAD claim.

Defendants argues, erroneously, that Plaintiff failed to allege a pattern of discriminatory conduct under the continuing violation doctrine, and that all events preceding March 1, 2003 therefore should be excluded from Plaintiff's NJLAD claim. "[U]nder the continuing violation doctrine, when an individual is subject to a continual, cumulative pattern of [discriminatory] conduct, the statute of limitations does not begin to run until the wrongful action ceases." Royster v. N.J. State Police, 2007 WL 4441103, at *6 (N.J. Super. Ct. App. Div. Dec. 20, 2007) (citing Wilson v. Wal-Mart Stores, 729 A.2d 1006, 1010 (N.J. 1999)).

In the Complaint, Plaintiff states that "[t]he first discriminatory acts by the Defendants occurred August 2 2001 [and] To [sic] date Discriminatory [sic] acts are continuing." This

assertion evidences Plaintiff's intent to use the continuing violation doctrine to assert discrimination and hostile work environment claims that rely on acts performed by Defendants more than two years after the Complaint was filed. The continual, cumulative pattern of discrimination alleged by Plaintiff permits Plaintiff to rely on incidents occurring outside of the limitations period when asserting her NJLAD claim.

## IV. CONCLUSION

For the reasons set forth above, this Court shall grant, in part, and deny, in part, Defendant's motion to dismiss the Amended Complaint. Judgment shall be entered in favor of HCCF, HCCC, County of Hudson, and Department of Corrections for Plaintiff's common-law claims for negligent and intentional infliction of emotional distress. The Section 1983 claims raised in the Amended Complaint shall be dismissed, with prejudice. Last, Plaintiff may not rely on any events preceding June 29, 2004 to substantiate her defamation claim against Defendants, or her intentional infliction of emotional distress claim against Autun, Drumler, Moore, Henderson, Staltari, Green, Aviles, Captain Scott, Captain Montanez, Captain Day, and Eady.

Dated: March 27, 2008

S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.